# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3342

_____

United States of America,

        Appellee,

v.

Michael Gavin,

        Appellant.

\*
\*
\*
\*
\*   Appeal from the United States
\*   District Court for the
\*   Eastern District of Arkansas
\*
\*
\*

_____

Submitted: April 14, 2009
Filed: October 5, 2009

_____

Before LOKEN, Chief Judge, COLLOTON, Circuit Judge, and ROSENBAUM,[1] District Judge.

_____

ROSENBAUM, District Judge.

On February 1, 2008, a jury convicted Michael Gavin of witness tampering, in violation of 18 U.S.C. § 1512(a)(2)(A). The district court sentenced him to 24 months imprisonment. Gavin appeals his conviction. We affirm.

_____

[1]The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota, sitting by designation.

## I. Background

On April 4, 2007, a grand jury indicted appellant, Michael Gavin, on charges of kidnaping, in violation of 18 U.S.C. § 1201(a)(1) and (2 ). On the eve of trial, the parties agreed to dismiss the indictment due to a technical defect – but not before Gavin saw the name of Douglas Hoskinson, his former cellmate, on the government's witness list.

After seeing this, Gavin allegedly told Felix Green, a fellow inmate, Hoskinson was an informer, and yelled out Hoskinson's name at the county jail. He also wrote a letter to fellow inmates Keith and Byrd. The letter said:

> Hey, Keith, Byrd,
> What's up? They f---ed me off. My whole family was here. I was in trial clothes, and they wanted me to sign a new indictment. I refused. They dismissed the charges and are re-indicting me. Anyway, the informant in the dorm is Doug Hoskinson and one more. I was put in the hole the night before because Doug is on the prosecutor witness list against me. I saw it with my own eyes, and Doug Hoskinson's name came out of Edward Walker's mouth. I am not f---ing joking or being paranoid. I heard and saw his f---ing name against me for prosecution. Let everyone know I have never said anything in that dorm except I am innocent. I am sick of this s--t, and it's over with. I am working on getting your change to you. There is two in the dorm, Doug Hoskinson and another one. Mike, I am in the dungeon, T-312.

On December 5, 2007, after this letter came into possession of federal authorities, the grand jury re-indicted Gavin for kidnaping. The new indictment added a count of witness tampering, and stated Gavin, "aided and abetted by another person known to the Grand Jury, did knowingly use intimidation against another known to the Grand Jury, with the intent to influence, delay, and withhold the testimony of that person . . . ." Specifically, the indictment charged that Gavin relayed information to Hoskinson indicating he should "watch his back" if he testified against Gavin.

The indictment charged witness tampering, under 18 U.S.C. § 1512(a)(2)(A). This was the wrong statute. Section 1512(a)(2)(A) prohibits the use of "physical force or the threat of physical force" against a witness. This "threat of physical force" contrasts with 18 U.S.C. § 1512(b)(1), which prohibits the known use of intimidation or threats to influence testimony. It appears the prosecutor either attributed 18 U.S.C. § 1512(b)(1)'s language to 18 U.S.C. § 1512(a)(2)(A), or simply misnumbered the statute. The error was not found prior to trial.

At trial, the government introduced Gavin's letter, as well as the testimony of inmates Felix Green, Daryl Keith Foster, and Douglas Hoskinson. Green, Gavin's former cellmate, swore Gavin told him in November, 2007, that Hoskinson was the informant. Gavin asked Green to tell other inmates about Hoskinson, and Green testified the informer "got the message." (Tr. 254:15.) Green also stated Gavin yelled Hoskinson's name throughout the Pulaski County Jail. (Tr. 254:3-5.) In response to Gavin's outburst, deputies transferred him to another unit. Green told the jury "it's not a good thing" to be known as an informer, because "you will probably get beat up, you know." (Tr. 255:19-25.)

Daryl Keith Foster, the "Keith" in Gavin's letter, testified he passed the letter on to fellow inmate Byrd. After doing so, Foster stated he saw Byrd grab Hoskinson on the prison's basketball court. Although Foster said he did not hear their conversation, he saw Byrd shaking a finger in Hoskinson's face. Like Green, Foster testified prison "snitches" are subject to physical harm. (Tr. 300:19-25.)

Despite any efforts at intimidation, Hoskinson testified at Gavin's trial. He told the jury Gavin confessed to rape and kidnaping. Hoskinson also reported seeing Gavin's letter and fearing "something" would happen to him. (Tr. 267:16-268:4.)

At the conclusion of trial, the judge instructed the jury the defendant was charged with witness tampering. The jury was further instructed that conviction required proof "the defendant knowingly used intimidation or threats against Douglas

-3-

Hoskinson," and "did so with the intent to influence or prevent the testimony of Douglas Hoskinson in this proceeding." (Tr. 695:17-22.) The judge read 18 U.S.C. § 1512(a)(2)(A) for the jury, noting:

> [The] charge is based upon a statute which is federal law and provides as follows. And I'm quoting from that statute: [w]hoever uses physical force or the threat of physical force against any person or attempts to do so with intent to (A) influence, delay, or prevent the testimony of any person in an official proceeding, such as a trial, shall be guilty of an offense against the United States. (Tr. 695:9-16.)

> The parties did not object to the jury instructions.

Gavin appeals, arguing violation of his Fifth and Sixth Amendment rights, because the indictment used § 1521(b)(1)'s language, while referencing § 1512(a)(2)(A). He claims the jury instructions, as well as the submitted evidence, amounted to a constructive amendment of the indictment. Finally, he argues the evidence was insufficient to sustain a conviction under either § 1512(b)(1) or § 1512(a)(2)(A). At oral argument, the government maintained it properly charged defendant pursuant to § 1512(a)(2)(A), and the jury reasonably convicted, finding Gavin used "physical force or the threat of physical force" to intimidate Hoskinson.

## II. Discussion

### A. Constructive Amendment

Gavin's trial counsel did not object to the jury instructions at trial. Under Rule 30 of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P."), a party's failure to object precludes appellate review, except where plain error affects substantial

rights.[2]  See also Fed. R. Crim. P. 52(b); Jones v. United States, 527 U.S. 373, 388 (1999); Cross v. Celaver, 142 F.3d 1059, 1068 (8th Cir. 1998) (a party must object precisely, or issue is reviewed solely for plain error).  "Plain error review permits reversal only if the error was so prejudicial as to have affected substantial rights resulting in a miscarriage of justice."  United States v. Weaver, 554 F.3d 718, 722 (8th Cir. 2009) (quotations omitted).

Here the jury instructions asked if "the defendant knowingly used intimidation or threats against Douglas Hoskinson," when § 1512(a)(2)(A) governs the use or threat of physical force.  As a result, Gavin argues the instructions constructively amended the indictment.  The government replies, saying the material elements in the proof and the jury instructions matched those in the indictment, thus precluding amendment.  Alternatively, the government claims that, even if the instructions constituted a constructive amendment, Gavin cannot demonstrate plain error.

Constructive amendment occurs when "the essential elements of the offense set forth in the indictment are altered, either actually or in effect, by the prosecutor or the court after the grand jury has passed upon them."  United States v. Begnaud, 783 F.2d 144, 147 n.4 (8th Cir. 1986).  In United States v. Murphy,  the Seventh Circuit found constructive amendment in a similar case.  406 F.3d 857, 860 (7th Cir. 2005).  There, jury instructions asked whether defendant "knowingly intimidated or used physical

---

[2] The government suggests our review is precluded because it has not "waived waiver."  See United States v. Murphy, 406 F.3d 857, 860-861 (7th Cir. 2005).  The government is incorrect.  Our review is not precluded by statute.  See, e.g., United States v. Morgan, 384 F.3d 439, 442 (7th Cir. 2004) (declining plain error review under 18 U.S.C. § 3162(a)(2) because "[f]ailure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section".)  Accordingly, we review for plain error, pursuant to Fed. R. Crim. P. 30 and 52(b).  See United States v. Weaver, 554 F.3d 718, 722 (8th Cir. 2009) ("[B]ecause [defendant] did not object to the jury instructions at trial, [the Court] review[s] the jury instructions only for plain error.").

force" against a potential witness. The indictment, however, only accused defendant of using physical force – it did not mention intimidation. Id. at 860. The Seventh Circuit concluded that, where the instructions added the element of intimidation, the trial court had constructively amended the indictment.

Here, we similarly conclude the instructions altered the offense's essential elements. The indictment charged defendant with violating 18 U.S.C. § 1512(a)(2)(A), which bars the use or threat of physical force to influence a witness. The jury instructions, however, asked whether defendant "knowingly used intimidation or threats against Douglas Hoskinson . . . with the intent to influence or prevent" his testimony. When it added the element of intimidation, and failed to reference the use of physical force, the court constructively amended the indictment.

In the absence of objection at trial, we need not precisely decide whether constructive amendment compels reversal in all cases. Cf. United States v. Gill, 513 F.3d 836, 850 (8th Cir. 2008) (declining to decide whether constructive amendment constitutes reversible error per se where jury instructions did not constructively amend indictment). The Supreme Court may require automatic reversal of constructive amendments when a claim is preserved and reviewed for harmless error. See, e.g., Stirone v. United States, 361 U.S. 212, 214 (1960). But the Supreme Court has set forth the method for evaluating errors that were "not brought to the attention of the court." United States v. Olano, 507 U.S. 725, 731 (1993) (citing Fed. R. Crim. P. 52(b)). In the absence of any trial objection, we review for plain error.

We find this amendment does not rise to the level of plain error. There is simply no showing that the error "affected [Gavin's] substantial rights" or "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." United States v. Aleman, 548 F.3d 1158, 1164 (8th Cir. 2008). Section 1512(a)(2)(A) of Title 18 was read to the jury. The jury heard substantial evidence showing Gavin yelled out Hoskinson's name in the jail, wrote fellow inmates telling them of Hoskinson's betrayal, and of Hoskinson's fear for his safety. The government also presented

testimony from which the jury could find a risk of assault for jailhouse snitches. There is no reasonable probability Gavin would have been acquitted under the correct jury instruction.

### B. Variance

Gavin also argues the government's introduction of his letter at trial constructively amended the indictment, because "the letter set out a distinct method and means of alleged witness tampering that was not contained in the indictment." (Def.'s Br. 22.) The government notes this is actually a claim of variance, rather than constructive amendment. See United States v. Begnaud, 783 F.2d 144, 147 n. 4 (8th Cir. 1986) ("[A] variance occurs when the essential elements of the offense set forth in the indictment are left unaltered but the evidence offered at trial proves facts materially different from those alleged in the indictment.") This is, in fact, a claim of variance.

The difficulty is, "[a] variance between the indictment and proof at trial requires reversal of a conviction only if the variance actually prejudiced the defendant." United States v. Begnaud, 783 F.2d 144, 148 (8th Cir. 1986). Once again, the indictment apprised Gavin of the evidence against him. It charged him with violating 18 U.S.C. § 1512(a)(2)(A) — using "physical force or the threat of physical force" against Hoskinson to influence his testimony. It accused him of relaying a message to Hoskinson "through others housed at the Pulaski County Jail." The indictment also alleged Gavin "relayed information" to Hoskinson, telling him he "had better watch his back" if he testified against Gavin.

Trial testimony supported these accusations. Inmate Green testified Gavin yelled Hoskinson's name during lock-up. The evidence showed Gavin wrote inmates Keith and Byrd saying Hoskinson would testify against him at trial. Hoskinson testified he read this letter and feared for his safety. Although no evidence directly showed Gavin told Hoskinson to "watch his back," the evidence did demonstrate

Gavin relayed the message to Hoskinson that he should fear for his safety.  There is no material difference between the indictment's accusations and the evidence presented at trial.

C.  Sufficiency of Evidence

Finally, the Court considers Gavin's claims that the evidence does not support his conviction and his conduct was protected by a First Amendment right of free expression.  Gavin maintains that, where the jury received no evidence suggesting physical force, he cannot be convicted under § 1512(a)(2)(A).[3]  "Evidence is sufficient to sustain a conviction if, when viewed in the light most favorable to the government, it offers substantial support for the verdict."  See United States v. Slaughter, 128 F.3d 623, 627 (8th Cir. 1997).  This Court will reverse "only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." United States v. Langley, 549 F.3d 726, 729 (8th Cir. 2008).  To establish a violation of witness tampering under § 1512(a)(2)(A), the government must show Gavin used or threatened physical force with the intent of curtailing Hoskinson's involvement in his prosecution.  See United States v. West, 303 F. App'x 156, 157 (4th Cir. 2008).

Viewed in this fashion, the evidence is fully sufficient to sustain Gavin's conviction under 18 U.S.C. § 1512(a)(2)(A).  The use of this statute has been affirmed in similar instances, when defendants attempted to intimidate jailhouse snitches and informers.  See West, 303 F. App'x at 156 (affirming a conviction under § 1512(a)(2)(A) where one individual made a cutting motion across his neck to discourage an informer from testifying). The Seventh Circuit upheld a § 1512(a)(2)(A) conviction where a prisoner threatened an informer through a middleman, despite the

_____

[3] Gavin also argues there was insufficient evidence to support a conviction under § 1512(b)(1).  The Court disagrees; the jury convicted Gavin under § 1512(a)(2)(A), as such, the Court need not address whether the evidence would have been sufficient to convict under § 1512(b)(1).

fact that the informer never received the threatening message. See also United States v. England, 507 F.3d 581 (7th Cir. 2007) ("[T]he statute prohibits expressing an intent to inflict injury on another through physical force.").

Gavin's letter to Keith and Byrd accused Hoskinson of snitching and said Gavin was "sick of this s--t" and "its over with." Keith said he read the letter and passed it on to Byrd, and saw Byrd shake his finger in Hoskinson's face. Inmate Green testified Gavin told him to "relay" a message to the other inmates about Hoskinson. (Tr. 254:4.) Multiple individuals testified to the risk of violence for jailhouse snitches. Finally, Hoskinson testified he saw the letter and feared for his safety. Gavin enlisted inmates to aid him in intimidating Hoskinson. A jury could well find his actions threatened physical force and were an attempt to discourage Hoskinson's testimony.

Finally, we reject Gavin's claim that his behavior is protected by the First Amendment. It is "well settled that threats of violence are . . . unprotected speech." United States v. Dinwiddie, 76 F.3d 913, 922 (8th Cir. 1996).

## III. Conclusion

The prosecutor's double error in drafting the indictment passed without objection. Neither the government, nor the defense, objected to the jury instructions which charged elements not mentioned in the second indictment. These facts, however, do not amount to plain error. When Gavin exposed Hoskinson as an informer in a prison setting, he intentionally exposed Hoskinson to fellow inmates' scorn and anger, thus causing Hoskinson's intimidation. We find this evidence sufficient, as did the jury, to uphold defendant's conviction of violating 18 U.S.C. § 1512(a)(2)(A).

_____